UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| TRUSTEES of the NORTHERN NEVADA OPERATING ENGINEERS HEALTH & WELFARE TRUST FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MACH 4 CONSTRUCTION, LLC, a Nevada limited liability company; DUNCAN MILLER; ANGELA MILLER; DOES 1-100; and BLACK AND WHITE COMPANIES 101-200; <br><br> Defendants. | 3:08-CV-00578-LRH-RAM <br><br> ORDER |

Before the court is Plaintiffs', trustees of various operating engineer trust funds (collectively "Plaintiffs"), Motion for Summary Judgment (#50[1]) filed on March 2, 2010. Defendants Mach 4 Construction, LLC ("Mach 4"); Duncan Miller ("Mr. Miller"); and Angela Miller ("Ms. Miller") (collectively "Defendants") filed an opposition (#52) to which Plaintiffs replied (#57).

**I.     Facts and Procedural History**

Plaintiffs are the chairman and co-chairman of the Board of Trustees of various operating engineer trust funds (collectively "trust funds"). (Compl. (#1) ¶ 3.) The trust funds are

---

[1]Refers to the court's docket entry number.

employee benefit plans according to Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and multi-employer plans according to Section 3(37) of ERISA, 29 U.S.C. § 1002(37). (*Id.*)

Defendant Mach 4 is a Nevada corporation that employs operating engineers. (Compl. ¶¶ 4-5.) On May 1, 2007, Mach 4 executed the Independent Northern Nevada Construction Agreement ("Short Form") with Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO ("Union"). (Compl. ¶ 10.) The Short Form contains terms from the Master Agreement executed by the Nevada Chapter of the Associated General Contractors of America, Inc., and the Union. Together, the Short Form and Master Agreement are the controlling Collective Bargaining Agreements ("CBAs").

Pursuant to the CBAs, Mach 4 agreed to make fringe benefit payments to the trust funds for every hour worked by operating engineers regardless of their union membership status. (Compl. ¶ 13.) Additionally, Mach 4 agreed to submit employer contribution reporting forms to Plaintiffs on a monthly basis. (*Id.*) Moreover, pursuant to the Short Form, Mr. and Ms. Miller, managers at Mach 4, guaranteed Mach 4's obligations. (Mot. Summ. J. ¶ 2.)

On October 30, 2008, Plaintiffs filed a complaint against Defendants, alleging three causes of action: (1) breach of contract - Mach 4; (2) breach of guaranty - Mr. Miller; and (3) breach of guaranty - Ms. Miller. Thereafter, on March 2, 2010, Plaintiffs filed the present motion for summary judgment (#50).

**II.     Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III.     Discussion**

According to § 12.01.00 of the Master Agreement, Mach 4 agreed to contribute to the Trust Fund for every hour worked by an operating engineer. (*See* Mot. Summ. J., Ex. 4 56.) Plaintiffs contend that Mach 4 breached the Collective Bargaining Agreements by failing to report and contribute for all hours worked by operating engineers. (Compl. ¶ 15.) In opposition, Mach 4 argues that there was no breach of contract because it terminated the CBAs prior to the date of the

alleged breach.

On June 2, 2008, Defendants sent notice to Plaintiffs that it was terminating the CBAs as of May 1, 2008. (Defs.' Opp'n Pls.' Mot. Compel, Ex. 4.) Plaintiffs argue that Defendants' notice was too late, as a matter of law, to terminate the agreements and therefore, summary judgment on the breach of contract claim is appropriate. (*See* Pls.' Mot. Summ. J. 15:18-19.)

Pursuant to the Short Agreement:

> The Individual Employer agrees to be bound to . . . future Master Agreements and any amendment(s) thereto: provided, however, . . . either party . . . [may] terminate this Agreement . . . during the period of sixty (60) to ninety (90) days prior to the expiration of any Master Agreement.

(Mot. Summ. J., Ex. 2.) Moreover, the Master Agreement provides that:

> [The agreement is] in effect through June 30, 2008, and if the written notice provided by Section 8(d) of the National Labor Relations Act . . . is not given by either the Union or the Employer to the other, it shall continue indefinitely, provided however, this Agreement may be terminated at any time after June 30, 2008, by either the Union or the Employer giving to the other written notice provided by Section 8(d) of the Act in which event this Agreement shall terminate at the end of the sixtieth (60th) calendar day after receipt of such notice.

(Mot. Summ. J., Ex. 3.)

The plain language of the Short Form provides that either party may terminate the Short Form if it provides notice sixty days prior to the initial expiration of the Master Agreement. Moreover, that the Master Agreement, incorporating Section 8(d) of the National Labor Relations Act,[2] allows either party to terminate the Master Agreement if it provides notice at least 60 days prior to the proposed termination. Based on the CBAs, Plaintiffs contend that Mach 4 failed as a matter of law to provide appropriate written notice during the period of 60 to 90 days prior to the

---

[2] Pursuant to Section 8(d) of the National Labor Relations Act, "No party . . . shall terminate or modify such contract, unless the party desiring such termination of modification . . . serves a written notice to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification." (29 U.S.C. § 158(d)(1).)

4

expiration of the Master Agreement, and thus did not terminate the agreements. (Pls.' Mot. Summ. J. 15: 19-20.) Further, Plaintiffs argue that Mach 4's attempt to terminate the CBAs on May 1, 2008, by providing notice on June 2, 2008, is procedurally improper because the notice of termination can only terminate an agreement on a date after notice has been given. (*See* Reply Supp. Pls.' Mot. Summ. J. 9:1-9.)

In opposition, Defendants argue that the notice, provided on June 2, 2008, terminated the contracts on either May 1, 2008, or on August 30, 2008. (Opp'n Mot. Summ. J. 2:23; 3:7; Defs' Opp'n to Pls.' Mot. Compel, Ex. 4.) Defendants argue that the notice terminated the CBAs on May 1, 2008 because that was Defendants' stated date of termination. (Opp'n Mot. Summ. J. 2:22-23.) Defendants alternatively argue that the letter terminated the contracts on August 30, 2008, because the Master Agreement contains a termination provision that allows either party to terminate the agreement 60 days after notice is given, any time after the June 30, 2008 automatic continuation. (Opp'n Mot. Summ. J. 3:7-12.)

Initially, the court finds that the plain language of the CBAs does not permit or contemplate retroactive termination. Thus, Defendants' June notice was insufficient to terminate the agreements as of the proclaimed May 1, 2008 termination date. Accordingly, the court finds that Defendants did not terminate the CBAs on May 1, 2008, and, therefore, the Master Agreement did not terminate on June 30, 2008, but was automatically renewed pursuant to the Master Agreement's language. (*See* Mot. Summ. J., Ex. 3 ("if the written notice . . . is not given . . . [the Master Agreement] shall continue indefinitely."))

As to Plaintiffs' argument that Mach 4's notice did not terminate the agreements after the continuation of the Master Agreement, the court finds that a genuine issue of material fact exists regarding whether Defendants' notice terminated the CBAs sixty days after the notice became effective on June 30, 2008. (Defs.' Opp'n to Pls.' Mot. Compel, Ex. 4.) The CBAs do not indicate whether a party can provide a notice of termination prior to the automatic renewal date of

5

the Master Agreement and whether such notice would be sufficient to terminate the CBAs sixty days later.

Taking the evidence in the light most favorable to Defendants, Defendants' notice, even if insufficient to terminate the CBAs prior to automatic renewal on June 30, 2008, was sufficient to terminate the agreement sixty days after automatic renewal. (*See* Mot. Summ. J., Ex. 3 ("[the Master agreement] may be terminated at any time after June 30, 2008.")) The prior notice reflected Defendants' intent to terminate the CBAs at the earliest possible termination date which the court finds is sixty days after the Master Agreement's June 30, 2008 automatic renewal date. Therefore, the court finds that Plaintiffs are not entitled to summary judgment on their breach of contract claim because there is a disputed issue of material fact as to whether Defendants terminated the CBAs. Accordingly, the court shall deny Plaintiff's motion for summary judgment on the breach of contract claim. Moreover, because the breach of guaranty claims rely on the underlying breach of contract claim, the court shall deny summary judgment for those claims as well.

IT IS THEREFORE ORDERED that Plaintiffs' motion for summary judgment (#50) is hereby DENIED.

IT IS SO ORDERED.

DATED this 23rd day of July, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE