UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUSTEES of the NORTHERN NEVADA OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MACH 4 CONSTRUCTION, LLC, et al.,<br><br>Defendants. | 3:08-CV-00578-LRH-RAM |

Before the court is Plaintiffs' Motion for Audit and Attorney's Fees (#170[1]). Plaintiffs are the chairman and co-chairman of five trust funds providing pension and other benefits to unionized operating engineers. These trust funds are employee benefit plans and multi-employer plans under Section 3 of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(3), (37). Defendant Mach 4 Construction, LLC ("Mach 4") is a Nevada construction firm that employs operating engineers. Mach 4 has responded to Plaintiffs' Motion (#181), and Plaintiffs have replied (#184). Also before the court is Mach 4's Motion for Attorney's Fees (#171), to which Plaintiffs have responded (#177), and Mach 4 has replied (#183).

///

---

[1] Refers to the court's docket entry number.

## I. Facts and Procedural History

Plaintiffs brought suit against Mach 4 for delinquent fringe benefit contributions due under Mach 4's agreements with the local operating engineers union ("Local 3") (and under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145). (Complaint #1.) On July 7, 2009, the court approved an audit of Mach 4's books to ascertain the amount of the delinquent contributions over the alleged delinquency period, May 2007 through September 2009 (the time at which the audit took place). (Order #40).

Following a bench trial, the court determined that Mach 4's agreements with Local 3 terminated in June 2008, thereby ending Mach 4's obligation to make fringe benefit contributions. (Opinion #159.) During the period from May 2007 through June 2008, the audit showed that Mach 4 owed $7,547.16 in delinquent contributions (plus interest), an amount that Plaintiffs' expert auditor noted was "not unusual" for this type of employer. (Trial Transcript ("Tr."), p. 179:2-6.) The court awarded Plaintiffs this amount (plus interest and liquidated damages) as well as "reasonable audit and attorney's fees to be determined upon post-verdict application" under 29 U.S.C. § 1132(g)(2) (providing that an award of reasonable attorney's fees is mandatory in an action to recover delinquent fringe benefits).

## II. Legal Standard

When an ERISA plan fiduciary is victorious in an action to recover delinquent contributions under 29 U.S.C. § 1145, an award of reasonable attorney's fees is mandatory. *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1342 (9th Cir. 1988) (discussing section 1132(g)(2) and noting that "[t]he language 'shall award' denotes that such an award is mandatory"). An award of reasonable audit costs is also "consistent with the policy of encouraging full and fair contributions." *Id.* at 1343.

To determine reasonable attorney's fees, the court calculates the "lodestar figure" by multiplying the hours reasonably spent on the case by a reasonable hourly rate. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

1   While the lodestar figure is presumed reasonable, the court may, in rare instances, adjust the

2   lodestar to a more reasonable figure in light of any of the factors set forth in *Kerr v. Screen Extras*

3   *Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) that are not represented in the lodestar calculation.

4   *Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355 (9th Cir. 1990).

5   These factors are

6/7/8/9   > (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

10   *Kerr*, 526 F.2d at 70.

11   **III.   Discussion**

12       **A.  Plaintiffs' Motion**

13       Plaintiffs have asked for $35,100.82 in audit fees and $102,929.66 in attorney's fees and

14   costs as reflected by the lodestar calculation. Plaintiffs' counsel's rates, at $200 per hour, are

15   reasonable. In light of the result achieved, however, the number of hours Plaintiffs' counsel spent

16   on this case is unreasonable. The court finds that this is one of those "rare instances" in which the

17   lodestar amount does not reflect a reasonable amount of attorney's fees. A reduction is therefore

18   warranted.

19       At trial, evidence was introduced—for the first time—conclusively determining that Mach

20   4's agreement with the union had terminated on June 30, 2008, and along with it Mach 4's

21   obligations to make fringe benefit contributions to Plaintiffs. Plaintiffs, in contrast, relied on Local

22   3's negligent misrepresentation that Mach 4 had agreed to a lengthier collective bargaining

23   agreement, thus justifying an action for delinquent contributions that extended through the audit

24   period (until September 2009). The discrepancy thereby created between the actual delinquent

25   contributions and the alleged delinquent contributions is large: $236,475.85 (including interest). It

26   is therefore likely that, absent Local 3's carelessness, Plaintiffs would not have proceeded to trial

for a delinquency amount, including interest, of $16,603.75—an amount that Plaintiffs' expert characterized as "not unusual" for construction employers. It is likely that, absent Local 3's carelessness, Mach 4 would have readily remitted the actual delinquency amount—indeed, Mach 4 offered to settle the case for $84,000 on the condition that Plaintiffs recognize no further fringe benefit contributions were owing.[2] And it is almost certain that, in either of these two events, Plaintiffs would not have incurred fees totaling over $138,000.

It is therefore unjust to place the weight of Local 3's failings on Mach 4. Yet the Ninth Circuit has rejected a rule in which ERISA trusts fail to recover attorney's fees for achieving only *de minimis* recoveries of delinquent contributions. *B & E Backhoe, Inc.*, 911 F.2d at 1355. Accordingly, the court must determine the amount of fees Plaintiffs may recover against Mach 4.

With respect to the audit fees, there is a ready measure: since the audit was needless past the June 30, 2008 date, and since most of the claimed delinquent contributions occurred past this date (reasonably enough, since Mach 4 asserted—consistent with the findings at trial—that it was not obligated for contributions past June 30), the auditor did not reasonably expend his time determining the post-2008 delinquencies. However, the auditor does not provide information like an hourly rate or an itemization of the time spent on the audit. Rather, the auditor divides his time into two undifferentiated blocks: a block representing actual audit work (the "accounting fee") and a block representing preparation and appearance at trial (the "trial fee"). With respect to the former, the court will exclude costs of the audit corresponding to the period from July 1, 2008 through September 2009. Proportionally, this period represents a little over 50% of the entire audit period. However, since the bulk of the alleged delinquent contributions derived from this period, it is reasonable to believe that the July-September audit period required more intense auditing than the period from May 2007 through June 30, 2008. Accordingly, the court discounts the accounting fee

---

[2] Plaintiffs argue that they had no power to eliminate Mach 4's obligation to make fringe benefit contributions. In light of the court's finding that Mach 4 did not owe post-June 2008 contributions at all, this argument falls flat.

4

by 75% to represent an award of audit costs in line with Mach 4's actual delinquent contributions. The resulting accounting fee award is $4,151.92.[3] Since the trial fee is more akin to an expert witness fee, the court considers this fee in connection with the request for attorney's fees and costs, discussed below.

There is no one-to-one correspondence between attorney (and auditor trial fee) hours spent on this litigation and the legitimate vs. illegitimate delinquency periods. For instance, an hour spent responding to Mach 4's trial brief is not clearly divisible into increments associated with the legitimate delinquency and increments associated with the illegitimate delinquency. However, some rough idea of the appropriate discount rate may be gleaned from consideration of the *Kerr* factors. Plaintiffs sought $236,475.85 but recovered only, $16,603.75—a 7% recovery rate. Courts have often adjusted fee awards downward based on the fact that "the actual amount recovered is much less than sought." See *Motion Picture Indus. Pension Plan v. Klages Grp., Inc.*, 757 F. Supp. 1082, 1088 (C.D. Cal. 1991) (awarding one-third of the requested attorney's fees of over $100,000 because the amount recovered was one-third of the amount sought); *B & E Backhoe, Inc.*, 911 F.2d at 1355 (approving an approximately 30% downward adjustment of an attorney's fee award based on the *Kerr* factors). Moreover, in similar cases where the attorney's fees have outstripped recovery, the fee awards have mostly been modest: $12,000, $4,441.25, $34,191.93, and $41,090.75. *See B & E Backhoe, Inc.*, 911 F.2d at 1355 ($12,000 fee award; $8,068.45 recovery); *Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 799 (9th Cir. 1990) ($4,441.25 fee award; $671.74 recovery); *Klages Grp., Inc.*, 757 F. Supp. at 1088 ($34,191.93 fee award; $31,448.46 recovery); *Nw. Sheet Metal Workers Welfare Fund v. Morrison Const. Servs., Inc.*, 393 F. Supp. 2d 1053, 1056 (E.D. Wash. 2005) ($41,090.75 fee award; $215.16 recovery). These cases teach that a modest award is appropriate here.

///

---

[3] $16,607.69 - (.75 * $16,607.69) = $4,151.92.

Perhaps the most similar case is *Klages*. There, as here, an ERISA trust succeeded in its action to recover delinquent contributions, but it recovered only $31,448.46 after seeking $116,126.50. 757 F. Supp. at 1088. The trust then sought attorney's fees under section 1132(g)(2) in the amount of $102,575.80. The court found the attorneys' hourly rates reasonable but considered a downward adjustment appropriate based on "'the amount involved and the results obtained' as set forth in *Kerr*." *Id*. Since the trust recovered approximately one-third of what it sought, the court concluded that the trust was entitled to one-third of its requested attorney's fees. *Id*.

Here, the discrepancy between the recovery sought and the result achieved is even greater. And it is greater in large part because Plaintiffs ignored Mach 4's consistent (and, ultimately, correct) protests that its obligation to make contributions terminated after June 30, 2008. Therefore, Mach 4 asks for something like a 7% fee award (relative to the requested fee) to reflect proportionality with Plaintiffs' recovery of 7% of their claim.

Plaintiffs rely on *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) in arguing that a fee award arrived at through some sort of "proportionality" analysis is improper. In *Anderson*, the court observed that "fee-shifting helps to discourage petty tyranny" by eliminating the financial obstacles to bringing a small but meritorious claim. 578 F.3d at 545 (citation and quotation marks omitted). Yet while *Anderson* mounts a defense of claims in which the fees may exceed the awards, the court hedged its enthusiasm in important respects. For example, the court noted that a reduced fee award is appropriate in simple cases (where the claims are usually small) because "simple cases should require fewer hours than complex cases." *Id*. The court also allowed that a fee award may be inappropriately large where "the same result could have been achieved more efficiently." *Id*. at 546. The court agreed that "if a party achieves only partial success as that term is used in *Hensley*, then the district court must determine how many hours were related to advancing the winning claims." *Id*. at n.2. And finally, the court noted that in the case before it, the defendant employer had filed needless and frivolous motions that increased the

6

plaintiff trust fund's ultimate fees. *Id.*

Here, the concerns motivating the *Anderson* court are misplaced. First, Plaintiffs' requested fees are not unreasonable because they are disproportionate to the eventual award; rather, they are unreasonable because the legitimate claims were simple, and simple cases should require fewer hours than complex cases. Second, Mach 4 offered to settle this case for more than Plaintiffs eventually recovered, and therefore "the same result could have been achieved more efficiently." Third, Plaintiffs' own expert provided testimony giving rise to the inference that Plaintiffs would likely not have pursued a trial on only the legitimate delinquencies. Fourth, *Anderson* leaves open the possibility that fees may be reduced where, as here, the plaintiff achieves only "partial success." The court therefore concludes an award of auditor's trial fees and attorney's fees and costs in the amount of Plaintiffs' ultimate recovery, $16,603.75, is appropriate. This does not reflect a determination that a fee award is reasonable if it bears a 1:1 ratio to the recovery; rather, it reflects a determination that a 1:1 ratio is reasonable because it best reflects (1) the simplicity of the legitimate claim, (2) the numerous opportunities to resolve the dispute more efficiently, and (3) the computational impossibility of isolating time spent on the legitimate delinquency from time spent on the illegitimate delinquency (with an understanding that time spent on the illegitimate delinquency nevertheless greatly dominated time spent on the legitimate delinquency).

### B. Mach 4's Motion

Mach 4 has requested attorney's fees and costs in the amount of $149,314, relying on 29 U.S.C. § 1132(g)(1). This statute authorizes such awards in any action "other than an action described in [section 1132(g)(2)]." But Plaintiffs' action arose under section 1132(g)(2), and Plaintiffs were awarded judgment. Therefore, Mach 4 is not eligible for attorney's fees. *See, e.g.*, *Klages Grp., Inc.*, 757 F. Supp. at 1086 (refusing to award defendant attorney's fees under section 1132(g)(1) in an action brought under section 1132(g)(2) and in which judgment was awarded to the trust fund).

///

**IV.     Conclusion**

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Audit and Attorney's Fees (#170) is GRANTED in part and DENIED in part. Plaintiffs are awarded reasonable audit and attorney's fees in the amount of $20,755.67.

IT IS FURTHER ORDERED that Mach 4's Motion for Attorney's Fees (#171) is DENIED.

IT IS SO ORDERED.

DATED this 18th of September, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE